# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CONNER CHILDREN'S TRUST #2 AND CLEVELAND AVENUE ASSOCIATES, | |
| Plaintiffs-Appellees, | No. 06 C 6001 |
| v. | Judge James B. Zagel |
| KMART CORPORATION, | |
| Defendant-Appellant. | |

## MEMORANDUM OPINION AND ORDER

This is a dispute regarding the proper interpretation of a lease renewal clause. During the course of its Chapter 11 bankruptcy proceedings, Kmart Corporation ("Kmart") sought to exercise its option to renew the lease for its Santa Rosa, California store. In response, Kmart's landlord, Conner Children's Trust #2 and Cleveland Avenue Associates ("Landlord"), filed a complaint, arguing, among other things, that Kmart's attempt to exercise the renewal option was too late. The bankruptcy court ultimately found for Landlord; Kmart appeals.

## I. BACKGROUND

On August 28, 1968, Kmart's predecessor-in-interest and Landlord's predecessor-in-interest entered into a lease for a store to be built in Santa Rosa, California (the "Lease"). At the time the Lease was signed, the parties were uncertain about when the construction on the building would be completed and when the tenant could assume occupancy. This uncertainty explains the manner in which the termination clause is written. That clause, found in §2 of the Lease, provides that the Lease "shall terminate upon such date as shall be twenty-three (23) years from the last day of the month in which said date of first occupancy shall occur."

As it turned out, the "date of first occupancy" was February 26, 1970. Accordingly, the primary term expired on February 28, 1993 (i.e., twenty-three years after the last day of the month when the store was first occupied).

Section 12(a) of the Lease granted Kmart the option of extending the Lease for up to three times, at five years per extension. That section states:

> Tenant shall have the option to extend the term of the Lease for an additional period of five (5) years upon the same terms and conditions of this lease, which option shall be exercised by notice to the Landlord not less than six months prior to the expiration of the term hereof.

Kmart renewed the Lease the first time via a letter dated April 27, 1992. It renewed the Lease a second time via a letter dated August 8, 1997. It is Kmart's attempt to renew its lease for a third time that is at issue here. The second renewed term was set to expire on February 28, 2003. Kmart mailed a letter seeking to renew its lease for the third time on August 29, 2002. Landlord responded to this letter shortly thereafter contending that Kmart could not renew for various reasons, including the untimeliness of its final renewal attempt. Despite Landlord's insistence that it vacate, Kmart remained in the premises and continued to pay rent at the rate specified in the Lease. Landlord initiated this case in order to remove Kmart and to obtain holdover rent.

In the proceedings below, Kmart argued that the renewal notice was not due until August 31, and thus asserted that its renewal was timely. Landlord, on the other hand, argued that the renewal notice was due August 28, and therefore, that Kmart's attempt to renew was one day late. In the context of its ruling denying Kmart's motion for summary judgment, the bankruptcy court determined that the Landlord's interpretation was correct. Thereafter, the matter went to

trial. The bankruptcy court ultimately ruled that Kmart's mistaken interpretation of the renewal date was a "mistake of law." The import of that conclusion was that Kmart was not entitled to equitable relief. The court also heard expert testimony—over Kmart's objection—from Landlord's real estate broker regarding the value of the Lease property. The bankruptcy court ultimately entered a Judgment Order entitling Landlord to $4,738,824.60 in holdover rent. The court further held that Kmart would be responsible for an additional $3,623.22 per day in rent until it vacated.

Kmart appeals the bankruptcy court's interpretation of the Lease; its interpretation of California law regarding equitable excusal of late notice; its denial of Kmart's motion in limine to exclude Landlord's expert; and the bankruptcy court's conclusion regarding the fair market value of the property. For the reasons stated below, I disagree with the bankruptcy court's ruling.

## II. DISCUSSION

### A. Standard of Review

I review the bankruptcy court's findings of fact for clear error and review its conclusions of law *de novo*. *In re Midway Airlines, Inc.*, 383 F.3d 663, 668 (7th Cir. 2004); *see also* FED. R. BANKR. P. 8013. I review a bankruptcy court's contract interpretations *de novo*. *See Universal Guar. Life Ins. Co. v. Coughlin*, 481 F.3d 458, 462 (7th Cir. 2007).

### B. Renewal Notice Was Due The Last Day of August (August 31, 2003)

The issue is whether Kmart's renewal notice was due on August 28 (as Landlord insists), or whether it was due on the last day of August. I conclude that the renewal notice was not due until the last day of August, and thus I find that Kmart's renewal notice was timely.

The resolution of this question depends on the interplay between the termination clause (§2) and the renewal clause (§12(a)). The termination clause sets forth the date when the Lease expires as "twenty-three (23) years from the last day of the month in which said date of first occupancy by Tenant shall occur." The renewal clause keys off the expiration date by requiring the tenant to provide notice of its intention to renew "not less than six months prior to the expiration" of the Lease. That is, the renewal notice deadline was dependent upon the termination date, and when the Lease was signed, neither date was known. As it turned out, the date when Kmart's predecessor-in-interest first occupied the premises was in February. Thus, after the two renewals, the Lease was set to expire for the third time on the last date of February in 2003. The question here is when was Kmart's renewal notice due.

Landlord argues that once it became known that the Lease was going to expire on February 28, 2003, that date (February 28) became the starting point for calculating the date by which Kmart had to communicate its intent to renew. Thus, Landlord simply counts backwards six months from February 28, 2003 and argues that the renewal was due on August 28, 2002. Kmart, by contrast, asserts that even after February 28 became known as the expiration date, the language from §2 (stating that the Lease shall terminate on "the last day of the month") remained operative. Therefore, Kmart argues that the renewal date had to be calculated as six months prior to the last day of February 2003, i.e., the last day of August 2002. Thus, according to Kmart, its renewal notice was not due until August 31, 2002.

I conclude that language from §2 retained its force even after the exact date when the Lease would expire became known. Because the phrase "the last day of the month" remained in effect, the date by which renewal notice was required was not six months prior to February 28,

4

but six months prior to the last day of the month. I further find that six months prior to the last date of February is the last date of August, or August 31. Because Kmart provided notice of its intent to renew before August 31, its notice was timely.

A brief illustration underscores why this is the proper result. Suppose instead of February, the first date of occupancy would have occurred in August. In such a situation, the term would have expired on August 31. Assuming Landlord's interpretation of the Lease is correct, when would notice of renewal have been required? There is no February 31, of course. I assume that no one would argue that renewal notice would not be due until March 3. Quite obviously, in such a situation, renewal would have been due on February 28. That is so because that is the last date of the month. This example demonstrates that the language "last day of the month" had to remain in effect. The mere fact that there were fewer days in the month when the lease expired (28) than there were in the month in which notice of renewal was due (31) does not override this principle. Just as renewal notice would have been due on the last day of February in the example above, so too was renewal notice due on the last day of August in the case at hand.

While Kmart's position prevails, Landlord's argument is by no means frivolous. In fact, the bankruptcy court's lengthy oral ruling was thorough and well-reasoned. Nevertheless, Kmart's position is ultimately more persuasive. Moreover, I find the California cases Landlord cites regarding how to calculate terms of months to be inapposite. The simple fact is that in this case, there is a contract that refers to "the last day of the month." It is this language that both commands the result I reach here and distinguishes the cases Landlord cites.

While the result I reach here is the appropriate one based on the Lease, it is also the just outcome based on the equities. First, the purpose of the renewal provision is to ensure that

5

Landlord had six months notice that Kmart intended to renew. That purpose is served in materially the same way whether Kmart provided notice on August 28 or August 31. In addition, a determination that notice was late subjects Kmart to a severe penalty, whereas a determination that the notice was timely serves only to hold Landlord to the deal it originally entered into when it (i.e., its predecessor-in-interest) negotiated the Lease. In short, a determination that the renewal notice was timely comports with the equities in this case. This further reinforces the appropriateness of the outcome.

The date by which Kmart had to provide notice of its intention to renew the Lease was August 31, 2002. Therefore, Kmart's notice—mailed on August 29—was timely.[1]

### III. CONCLUSION

For the aforementioned reasons, the decision of the bankruptcy court is reversed, and this matter is remanded for further proceedings consistent with this opinion.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: November 14, 2007

---

[1] My conclusion regarding the appropriate interpretation of the contract obviates the need to assess Kmart's arguments regarding equitable excuse for late notice under California law. In addition, I need not consider the bankruptcy court's denial of Kmart's motion in limine or its determination regarding the fair market value of the property. Thus, I do not reach these questions here.